UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LOUIS SEAN BODWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17-cv-2614-SPM |
| | ) | |
| SUSAN HASTINGS, M.D., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon review of the complaint filed by plaintiff Louis Sean Bodway, an inmate at the St. Louis County Justice Center. For the reasons explained below, defendants Julia Childress, Ms. Jane Doe, and John Doe will be severed from this action, and the claims against them will be dismissed. In addition, plaintiff's claims against Susan Hastings and Jane Doe Bella will be dismissed.

**Background**

Plaintiff initiated this action on October 20, 2017 by filing a civil complaint pursuant to 42 U.S.C. § 1983 against Susan Hastings, M.D., Jane Doe Bella, M.D., Julia Childress, Jane Doe, and John Doe. He expressly stated that he intended to sue all defendants in an individual capacity only. He sought and was granted leave to proceed in forma pauperis, and the Court conducted initial review pursuant to 28 U.S.C. § 1915(e).

Upon initial review, the Court noted that plaintiff alleged claims against some defendants based upon events that occurred in 2017, and additional claims against other defendants based upon unrelated events that occurred in 2014. Recognizing that leave to amend should be freely given when justice so requires, Fed. R. Civ. P. 15(a), the Court gave plaintiff the opportunity to

submit an amended complaint, clearly explaining his options under Rules 18 and 20 of the Federal Rules of Civil Procedure. (Docket No. 6/filed December 11, 2017). The Court also clearly explained that plaintiff was required to allege how each named defendant was directly involved in and personally responsible for violating his constitutional rights, and also that if he wished to name "Doe" defendants, he was required to allege sufficient facts so they could be identified following reasonable discovery. The Court also waived the initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(4).

In response, plaintiff filed a document titled "Acknowledgement and Objection to Order and Memo of 12/11/17," stating that he would not file an amended complaint. (Docket No. 7). Plaintiff interpreted the Court's order as telling him that he "did [his] § 1983 wrong. We knew you would because its clear to this Court that you don't know what you are doing . . . Here are new § 1983 forms. Do, again, that which you did wrong. Only this time, do it right. Never mind your motions for injunctive relief and appointment of counsel." *Id.* at 3-4.[1] Plaintiff also complains about a lack of resources at the jail's library, among other things. He writes that the Court should have instead granted him injunctive relief or granted his motion for appointment of counsel, and he asks the Court to do so now.

**The Complaint**

The allegations in the complaint were briefly summarized in this Court's December 11, 2017 Memorandum and Order. However, the Court will now summarize them more fully.

According to the complaint, plaintiff suffers from numerous health problems. These include a rod and screws in his left leg with an open wound above one of the screws, a prosthetic heart valve, kidney problems, hepatitis C, and pain due to back problems and past burns.

---

[1] As of the date of this Order, plaintiff had filed a motion to appoint counsel and had stated in his complaint that he sought injunctive relief, but he had not filed a motion for injunctive relief.

Counts I and II allege denial of medical care, and concern events that occurred in September of 2017. In Count I, plaintiff alleges that Dr. Hastings cultured a wound on his leg to determine whether it was infected. He alleges that Dr. Hastings did so even though he told her it was a waste of time and money because he knew he had a MRSA staph infection, and "all she needed to do was contact [St. Louis University Hospital] and they would verify this and tell her what antibiotics to use as they were aware of the infection because I had left [St. Louis University Hospital] Against Medical Advice." (Docket No. 1, Attch. 1, p. 4).

Plaintiff then saw Dr. Hastings for a return visit, and she told him that lab testing had revealed a MRSA staph infection. She said she was not going to "run a bunch of antibiotics through your body 'cause that would just be a waste of money. Besides, its been that way for months. But we'll keep an eye on it and I'll discharge you from the infirmary today." *Id.* at 6. She prescribed a nutritional supplement to give plaintiff's body strength to fight the infection.

Plaintiff alleges that Dr. Hastings should have treated him with intravenous Vancomycin "because every time I'm in a hospital with real doctors who actually treat their patients and I have an active MRSA infection, I.V. Vancomycin is what they always treat me with. It is expensive and to treat me with it would be counterproductive to Dr. Hastings' 'Mammon Crusade,' thus her refusal to treat my infection." *Id.* at 6-7. Plaintiff states that, by not curing his infection, she is putting him at risk of endocarditis and jeopardizing his life. He also states that the surgeon who placed the rod and screws in his leg told him that he required antibiotics. Finally, plaintiff alleges that Dr. Hastings offered him acetaminophen and ibuprofen for his pain, and that this amounted to gross negligence and callous indifference because every physician knows acetaminophen should not be given to a person with Hepatitis C.

In Count II, plaintiff alleges that Dr. Hastings refused to give him Oxycontin and Vicoprofen, even though he was in pain and had been prescribed those medicines when he was previously incarcerated at the jail. Plaintiff spoke to a nurse about this, and the nurse called Dr. Bella. However, Dr. Bella said that plaintiff could have ibuprofen, even though she knew he had been on kidney dialysis. Plaintiff alleges that Dr. Bella did this to make him suffer, and she was therefore sadistic and malicious and had violated his Eighth Amendment rights.

Count III concerns events that occurred in September of 2014. Plaintiff was in the infirmary, and he asked defendant Jane Doe, who plaintiff identifies only as "a passing nurse," to take him to the dentist. *Id.* at 12. Doe replied that plaintiff needed to fill out a dental request form. Plaintiff voiced disagreement, but did so anyway. Six weeks later he was still in pain, and when he finally saw a dentist, his tooth was infected and had to be removed. Plaintiff does not allege facts that explain how Doe or any other named defendant was responsible for the six-week delay.

Count IV also concerns an event that occurred in 2014. Plaintiff alleges that John Doe placed him on secure move status even though he did not deserve it, and that "angry or vindictive" staff members arbitrarily place inmates on secure move status. (Docket No. 1, Attch. 1, p. 15). Plaintiff alleges that he was automatically placed on secure move status upon his return to the jail. Plaintiff includes other unrelated allegations in Count IV. He alleges that a jail official refused to allow him to take a pencil to a meeting with his attorney; Dr. Hastings failed to put a bottom-walk/bottom-bunk lay-in in his file; and he was placed in a restraint chair and punished for refusing to travel stairs.

In Count V, plaintiff alleges that the diet served at the jail is nutritionally inadequate. Plaintiff also alleges that a nurse asked him to sign a medical release for a particular medical

facility even though she knew "damn good and well" that plaintiff had not been seen there. *Id.* at 25. Finally, plaintiff alleges that that his neighbor was crying from pain, but Dr. Hastings gave him Tylenol #3 instead of Percocet.

Plaintiff alleges that the jail "will deny every inmate that comes through our doors a constitutional level of medical care that conforms to contemporary standards of decency in order to secure the maximum profit margin possible," and will give "a little chunk of 'Mammon'" to the few inmates who file civil rights complaints. *Id.* at 26. He writes: "[w]omen like Julia Childress and Susan Hastings drag the U.S. Constitution through the mud on a daily basis" by implementing policies that violate its amendments, and will never receive "the suspension, termination and jail time that they truly deserve." *Id.* at 26-27. Plaintiff writes: "[t]hat's why I sued them individually only. I hope the county refuses to foot the bill for their defense and makes them hire their own lawyers. Susan Hastings is a greedy, sadistic, money-grubbing charlatan. She cares nothing for the inmate population that she was entrusted to care for, nor their health and welfare." (Docket No. 1, Attch. 1, p. 27).

Finally, plaintiff alleges that Childress, as the supervisor of the other defendants, "is responsible for their actions/inactions under the [doctrine] of respondeat superior." *Id.*

Plaintiff seeks various forms of injunctive relief. For example, he asks that Dr. Hastings be fired or suspended without pay, and subjected to federal prosecution. He also asks the Court to abolish the jail's secure move status policy, abolish the jail's use of restraint chairs, change the jail's food service, release him from secure move status, and transfer him to St. Louis University Hospital for medical treatment. He also seeks unspecified monetary damages.

**Discussion**

Plaintiff's claims of denial of medical care in 2017 do not share common questions of law or fact with plaintiff's other claims, including his claims that he was denied dental care in 2014, arbitrarily placed on secure move status in 2014, and that the jail's food service was inadequate. Consideration of all of these claims would require review of entirely separate events that occurred approximately three years apart and that involve different defendants or groups of defendants. The Court therefore concludes that the five named defendants are not properly joined under Rule 20(a)(2).

Rule 21 of the Federal Rules of Civil Procedure provides:

> Misjoinder of parties is not a ground for dismissing an action. On motion, or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

Dr. Hastings is the lead defendant, and plaintiff's claims against her concern a 2017 to present denial of medical care. Plaintiff's allegations against Dr. Bella are similar and contemporaneous. The Court will therefore only consider plaintiff's claims against Drs. Hastings and Bella, and will sever plaintiff's remaining claims against the other three defendants and dismiss them without prejudice.[2] If plaintiff wishes to pursue those claims, he must do so in accordance with the Federal Rules of Civil Procedure in a separate action or actions.

Plaintiff alleges that Dr. Hastings violated his constitutional rights because she did not and will not give him intravenous Vancomycin for a MRSA staph infection as he requested,

---

[2] The complaint would be subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B) as to Childress and the Doe defendants even if plaintiff's claims against them were not severed from this action. Regarding Jane Doe, plaintiff alleges only that she told him to complete a form in order to receive dental treatment. Plaintiff does not allege that Jane Doe, or any other named defendant, was personally responsible for the six-week delay that plaintiff alleges caused him harm. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). In addition, plaintiff fails to allege sufficient facts such that Jane Doe could be identified following reasonable discovery. Plaintiff's allegations against John Doe are merely conclusory, and plaintiff specifically states that he is suing Childress under a theory of respondeat superior, which is not cognizable in these proceedings. *See Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 cases).

opting instead to monitor the infection and supplement his diet. He also alleges that Dr. Hastings refused to give him the particular pain medicine he requested, and offered him ibuprofen and/or acetaminophen even though he had Hepatitis C. Plaintiff also alleges that Dr. Bella said that plaintiff could have ibuprofen even though she knew he had been on kidney dialysis, and that she did so to make him suffer.

Because plaintiff was a pretrial detainee during the time in question, his claims regarding inadequate medical care are analyzed under the Fourteenth Amendment rather than the Eighth Amendment. However, because the Fourteenth Amendment affords pretrial detainees at least as great protection as that given to convicts under the Eighth Amendment, courts have consistently applied the Eighth Amendment deliberate indifference standard to pretrial detainee claims involving prison conditions or the denial of medical care. *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014), *Butler v. Fletcher*, 465 F.3d 340, 344-45 (8th Cir. 2006).

To state a claim for inadequate medical care under the Eighth or Fourteenth Amendment, a prisoner or detainee must plead facts sufficient to indicate a deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995). A claim of deliberate indifference involves both an objective and a subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citations omitted). The plaintiff must demonstrate (1) that he suffered an objectively serious medical need, and (2) the defendant actually knew of but deliberately disregarded that need. *Id.* A "serious medical need" is "one that has been diagnosed by a physician requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011).

The Court concludes that plaintiff's allegations against Drs. Hastings and Bella fail to state claims of constitutional magnitude. Assuming that plaintiff has established that he suffered from an objectively serious medical need, he has not demonstrated that Drs. Hastings or Bella deliberately disregarded that need. Instead, a reading of the complaint demonstrates that Dr. Hastings repeatedly saw plaintiff for medical evaluation, performed testing to determine the proper course of treatment, noted that the infection had been present for months, considered plaintiff's complaints of pain, and exercised her independent medical judgment regarding the best way to address the infection and manage plaintiff's pain. Similarly, the complaint demonstrates that Dr. Bella considered plaintiff's complaints of pain and exercised her medical judgment regarding the best way to manage it. Taken as a whole, plaintiff's complaint reflects only plaintiff's disagreement with Drs. Hastings and Bella's treatment decisions, his belief he would receive better care elsewhere, or, at most, that Drs. Hastings and/or Bella committed medical malpractice. Such allegations do not establish a constitutional violation. *See Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008) ("a mere disagreement with treatment decisions does not rise to the level of a constitutional violation"); *Long v. Nix*, 86 F.3d 761, 765-66 (8th Cir. 1996) (internal citations omitted) ("Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment"); *Estelle*, 429 U.S. at 106 (medical malpractice does not amount to a claim of constitutional dimension "merely because the victim is a prisoner").

The complaint is also subject to dismissal as to Dr. Hastings because it is malicious. An action is malicious when it contains disrespectful or abusive language, allegations which the plaintiff knows to be false, or it is a part of a pattern of abusive or repetitive litigation. *See In re*

*Tyler*, 839 F.2d 1290, 1293 (8th Cir. 1988). Here, as noted above, plaintiff refers to Dr. Hastings using disrespectful and abusive language, and the primary relief he seeks is for Dr. Hastings to be fired or suspended without pay and subjected to criminal prosecution. Plaintiff also expressly states that he is suing Dr. Hastings in her individual capacity only because he hopes the county will refuse to pay for her defense and make her hire her own attorney. In addition, the overall tone of the complaint is rather hostile. Finally, plaintiff refused the opportunity to amend his complaint to conform to the Federal Rules of Civil Procedure, even when it was explained that doing so was vital to the life of his lawsuit. While certainly not dispositive, this suggests that plaintiff is more interested in harassing and disparaging Dr. Hastings than in prosecuting his case in a serious manner in order to vindicate a constitutional right. Having considered the complaint as a whole, the Court concludes that it is malicious as to Dr. Hastings, and subject to dismissal on this basis, as well. 28 U.S.C. § 1915(e)(2)(B); *Spencer v. Rhodes,* 656 F. Supp. 458, 461-63 (E.D. N.C.1987), aff'd 826 F.2d 1059 (4th Cir. 1987) (an action is malicious when it is undertaken for the purpose of harassing litigants and not for the purpose of vindicating a cognizable right).

Accordingly,

**IT IS HEREBY ORDERED** that defendants Julia Childress, Ms. Jane Doe, and John Doe are **SEVERED** from this action, and the claims against them are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that the complaint and all of plaintiff's claims against defendants Susan Hastings and Jane Doe Bella are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel (Docket No. 3) is **DENIED** as moot.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

Dated this 15th day of February, 2018.

/s/ Jean C. Hamilton

JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE